**Brian Joseph STOLTIE, Petitioner,**

v.

**People of the State of CALIFORNIA, Respondent.**

**No. CV 06–00289 DDP (MLG).**

United States District Court, C.D. California.

June 21, 2007.

Brian Joseph Stoltie, Riverside, CA, Pro se.

Heather F. Crawford, CAAG–Office of the Attorney General of California, San Diego, CA, for Respondent.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

PREGERSON, District Judge.

This Petition for Writ of Habeas Corpus asks whether the trial court's use of an analogy to explain the "reasonable doubt" standard violated Petitioner's due process rights. Pursuant to 28 U.S.C. § 636, the Court has reviewed *de novo* the Petition, all the records and files herein, and the Report and Recommendation ("Report") of the United States Magistrate Judge. The Court disagrees with the Report that denies the Petition with prejudice because the Court finds that Petitioner's claim has merit. Accordingly, the Court grants the Petition and adopts the following order.

## I. BACKGROUND

This is a Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2254. In November 2003, Petitioner Brian Joseph Stoltie was charged with five criminal offenses in the Riverside County Superior Court: (1) rape, Cal.Penal Code ("CPC") § 261(a)(2); (2) rape of an intoxicated victim, CPC § 261(a)(3);[1] (3) sexual penetration with a foreign object, CPC § 289(a)(1); (4) assault with force likely to cause great bodily injury, CPC § 245(a)(1); and (5) robbery, CPC § 211.

Trial commenced on May 11, 2004. After the judge issued the standard California Criminal Jury Instructions ("CALJIC"), including CALJIC No. 2.90 on reasonable doubt,[2] deliberations began on May 19, 2004. (Report at 2.) After deliberating for one and a half days, the jury returned to the judge, explaining that they were deadlocked on Count 1, the rape charge, and were likely to be deadlocked on Count 4, the assault charge, as well. The following exchange between the foreperson and the judge took place:

FOREPERSON: No. 4 we reached a decision on. They didn't want to do any of the others until they settled on No. 1. We did a decision on No. 4. No. 4 and going to No. 1. Then some of [the jurors] expressed the opinion if they can't decide on 1, that changes their thoughts on 4. They want to renege, I guess you'd say....

JUDGE: And what you're telling me is you reached a verdict on Count 4, but now one or more persons is having second thoughts? Do I understand you correctly?

JUROR FOREPERSON: Yes, sir, because of the deadlock on No. 1.

JUDGE: That's interesting.

(Ct. Rep.'s Tr. at 601–02.)

The foreperson then asked the judge to resolve the crux of the jury's difficulties in reaching a verdict—confusion surrounding the definition of "reasonable doubt":

FOREPERSON: There seems to be some difference of opinion as far as instructions, such as beyond a reasonable doubt or beyond a possibility of a doubt.

JUDGE: My God, how could there be any question on that, after all the time I spent on jury instructions? ... The standard of proof is not beyond a possible doubt, because as the instruction plainly indicates, when you're talking about human affairs, human conduct, anything and everything is open to some possible or imaginary doubt. Reasonable doubt—The instruction may seem confusing, but if there's doubt, it has to be based on reason and logic, that's about the simplest way I can put it to you. I am not convinced that this jury has reached the end....

(Ct. Rep.'s Tr. at 602–03.)

Despite these instructions, the jury continued to struggle with the definition of

---

1. The trial court dismissed Count 2 for lack of sufficient evidence after the prosecution rested.

2. This instruction has since been replaced by the Judicial Council of California Criminal Jury Instructions ("CALCRIM") No. 220. CALJIC No. 2.90 states:

A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in the case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt.

Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything related to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

reasonable doubt and asked the judge for further clarification:

JUDGE: Is there an area that I can focus on that might help you out here?

A JUROR: That reasonable doubt, I believe you could make us clear on that.

.　　.　　.　　.　　.

JUDGE: [R]easonable doubt is defined as follows: It is not a mere possible doubt, because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge ... But all I'm going to do is emphasize to you it is not the same thing as proof to an absolute certainty ... on TV shows you hear proof beyond a shadow of a doubt. There's no such thing as that. It's proof beyond a reasonable doubt. And once again I will emphasize that the doubt must be based on reason and logic.

(Ct. Rep.'s Tr. at 604–05.)

[Missing Text] doubt standard. (Ct. Rep.'s Tr. at 607.) The judge denied this request and sought to explain reasonable doubt again:

JUDGE: It's not a matter of whether there's a little bit of doubt, some doubt. If you're gonna conclude that the defendant is not guilty, which you have every right to do, it has to be based on a reasonable doubt. And reasonable—I mean, use your own common-sense interpretation of what's reasonable and what isn't. Reasonable doubt, not some doubt, not some possible doubt.

(Ct. Rep.'s Tr. at 607–08.)

Even after the judge's four attempts to explain reasonable doubt, certain jurors remained confused:

JUROR NO. 3: Sorry. Could you just clarify that, you know, beyond a reasonable doubt or a reasonable doubt or what might—when we have to say guilty and when we have to say innocent, could you just kind of read back to us or give us a scenario?

JUDGE: I can only say so much.

Yes, sir, Juror No. 9.

JUROR FOREPERSON: The defense lawyer had a chart that he showed on the overhead, which seemed to bring a lot of question. And he just had reasonable, beyond a shadow, several things that weren't so, to stress the thing that was so, and it confused some. If we could have that chart even or—

JUDGE: No, that's not evidence. His chart said something?

JUROR NO. 2: Is that what you asked?

JUDGE: The chart said something to the effect of, maybe he did it. No, that's not good enough. It's likely he did it, but that's not good enough. But likely he concluded with in order to find him guilty, you have to be convinced beyond a reasonable doubt.

Now, if you have a doubt, and it's reasonable, then you vote not guilty.

If you have a doubt and it's not reasonable, what's your other alternative?

JUROR NO. 3: Thank you. I just wanted that clarified. Thank you.

JUDGE: Only you can decide if the doubt you have, if you have any, is reasonable. I mean, if I were to say—

JUROR NO. 3: If I have a doubt, that means not guilty, if I wouldn't have a reasonable doubt?

(Ct. Rep.'s Tr. at 609–10.)

At this point, the judge attempted to explain the reasonable doubt standard by means of an analogy. It is this instruction that the instant Petition challenges:

JUDGE: No. If you have a reasonable doubt, it's not guilty.

If I were to tell you that I am going to Blythe[3]—you know where Blythe is?

JUROR NO. 3: Yeah.

JUDGE: *I'm gonna go there in the middle of July and I am taking my skis with me because it snows every July*[4]*, you might say, I doubt it. And that would be a reasonable doubt, wouldn't it?*

*But if I told you I am going to Blythe and I am taking my swimming suit and water skis to go skiing in the Colorado River in the middle of July, but I am afraid it might be too cold, you'd think, I doubt it, but maybe that's not so unreasonable. Reason and logic apply.*

*I think that may help you out.*

(Ct. Rep.'s Tr. at 610–11)(emphasis added).

On May 24, 2004, the jury convicted Petitioner of Counts 4 and 5 (the assault and robbery charges) and found that he inflicted great bodily injury upon the victim during the commission of the crimes. (Clerk's Tr. at 245–48.) Petitioner was acquitted of Counts 1 and 3 (the rape charges). (*Id.* 245–48.) The trial court sentenced Petitioner to three years' imprisonment for the robbery conviction, plus an additional three years for inflicting great bodily injury. (*Id.* 292–93.) The trial court also imposed a combined six-year sentence for the assault conviction and for infliction of great bodily injury, but stayed the sentence under CPC § 654. (*Id.*)

On appeal, Petitioner argued that the trial judge's "skiing in Blythe" analogy was a constitutionally defective reasonable doubt instruction because it "improperly trivialized the reasonable doubt standard and lowered the prosecution's burden of

proof by indicating that it is the same standard used everyday to make commonplace decisions regarding things like vacations." (Pet. at 5.) However, the Court of Appeal disagreed with this characterization of the instruction and instead found that the "skiing in Blythe" analogy "merely attempt[ed] to illustrate the concept of reasonableness by contrasting a doubt that is reasonable with one that is not." *People v. Stoltie*, No. E036322, 2005 WL 2746783, at *5 (Cal.Ct.App. Oct. 25, 2005). Although the Court of Appeal noted that comments such as the "skiing in Blythe" analogy "are rarely helpful and often contain the seeds of mischief," it nevertheless affirmed the assault conviction with no further discussion. *Id.* n. 3.

Petitioner filed a Petition for Rehearing in the California Court of Appeal, which was denied. (Pet. Reh'g; Nov. 21, 2005 Order.) He subsequently sought review from the California Supreme Court, which was summarily denied. (Pet. Review; Jan. 6, 2006 Order.) Having exhausted his state judicial remedies, Petitioner now seeks federal habeas corpus relief.[5]

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was decided on the merits in state court only if the state court's decision was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."

---

**3.** Blythe is a town on the Colorado River, in the Sonoran Desert, approximately 220 miles east of Los Angeles.

**4.** The average high temperature in Blythe in July is 108 degrees Farenheit.

**5.** Petitioner also appealed the robbery conviction based on other comments that the trial judge made to the jury that are not relevant to the instant petition. The California Court of Appeal reversed the robbery conviction.

The Supreme Court has explained that a state court's decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). It has also explained that a state court decision involves an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case. *Id.* at 407–08, 120 S.Ct. 1495. The reviewing court may only issue the writ under these circumstances if the state court's application of clearly established law was "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495.

Because the California Supreme Court summarily denied review of Petitioner's case, the denial is presumed to rest on grounds articulated by a lower court in its written opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–06, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Thus, this Court must look to the Court of Appeal's decision as the last reasoned decision by a state court on Petitioner's claim.

## III. REASONABLE DOUBT INSTRUCTIONS

Though proof beyond a reasonable doubt is one of the most central concepts to our notions of criminal justice, it is one that eludes definition. This standard of proof enshrines and protects the presumption of innocence, "that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (internal quotation marks and citation omitted). Yet, the Supreme Court has recognized that this integral facet of criminal trials "defies easy explication" and has thus left the task of defining rea-

sonable doubt to lower courts. *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (holding that the Constitution does not require "any particular form of words" in defining reasonable doubt for the jury). As a result, jury instructions on reasonable doubt vary widely across the country. Henry L. Chambers, Jr., *Reasonable Certainty and Reasonable Doubt*, 81 Marq. L.Rev. 655, 698 (1998).

Some courts define reasonable doubt for the jury—either in terms of what it is, *see, e.g., Ramirez v. Hatcher*, 136 F.3d 1209, 1211 (9th Cir.1998) (affirming a jury instruction defining reasonable doubt as one that is "actual and substantial"), or what it is not, *see, e.g., United States v. Isaac*, 134 F.3d 199, 202 (3d Cir.1998) ("It is not a mere possible or imaginary doubt...."). Others instruct the jury on the definition of "proof beyond a reasonable doubt" by focusing on the government's burden. *E.g.,* Fed. Jud. Ctr. ("FJC"), Pattern Crim. Jury Instrs. No. 21 ("Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt."); *see, e.g., State v. Portillo*, 182 Ariz. 592, 898 P.2d 970, 974 (1995) (requiring that Arizona trial courts adopt the FJC "firmly convinced" standard); *Winegeart v. State*, 665 N.E.2d 893, 902 (Ind.1996) (endorsing the FJC "firmly convinced" instruction). Still others refuse to define reasonable doubt at all. *See United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir.1993) (reiterating the admonition that district courts should not define reasonable doubt); *United States v. Adkins*, 937 F.2d 947, 950 (4th Cir.1991) (warning against defining reasonable doubt for the jury).

The difficulty in defining reasonable doubt has led to unacceptable results— jury instructions that understate the prosecutor's burden or lead jurors to believe that the defendant has one. *See* Lawrence

M. Solan, *Refocusing the Burden of Proof in Criminal Cases: Some Doubt About Reasonable Doubt*, 78 Tex. L.Rev. 105, 119 (1999) (arguing that studies show standard reasonable doubt instructions shift the burden of proof to the defendant). Although courts presume that jurors understand the instructions they are given, *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), empirical research suggests that jurors in criminal trials often fail to understand the presumption of innocence. *See, e.g.*, Solan, *Convicting the Innocent Beyond a Reasonable Doubt: Some Lessons About Jury Instructions from the Sheppard Case*, 49 Clev. St. L.Rev. 465, 483 (2001) [hereinafter Solan, *Convicting the Innocent*] (discussing a Wyoming study in which nearly one-third of jurors who had participated in a criminal trial believed the burden of proof shifted to the defendant); David U. Strawn & Raymond W. Buchanan, *Jury Confusion: A Threat to Justice*, 59 Judicature 478 (1976) (finding that only 50 percent of prospective jurors in a Florida study instructed on reasonable doubt understood that the defendant did not have to present any evidence of his innocence and that the state had to establish her guilt). In fact, a number of studies have revealed a comprehension gap between jurors and judges with respect to reasonable doubt, as jurors are more likely than judges to quantify proof beyond a reasonable doubt in percentages that are close to a preponderance of the evidence standard. *See, e.g.*, Irwin A. Horowitz, *Reasonable Doubt Instructions: Commonsense Justice and Standard of Proof*, 3 Psychol. Pub. Pol'y & L. 285, 293 (1997) (citing studies showing jurors asked by indirect measures equate proof beyond a reasonable doubt to roughly 50 percent certainty of guilt, whereas judges place it at 79 to 92 percent). Though jury instructions are supposed to help laypersons understand legalese, this comprehension gap suggests that the essential meaning of the reasonable doubt standard is often lost in translation.

That is not to say that attempting to define reasonable doubt for jurors is a hopeless endeavor. To the contrary, studies of jurors' behavior suggest that the definition of the reasonable doubt standard jurors receive has a significant impact on their decisions. Irwin A. Horowitz & Laird C. Kirkpatrick, *A Concept in Search of a Definition: The Effects of Reasonable Doubt Instructions on Certainty of Guilt Standards and Jury Verdicts*, 20 Law and Human Behavior 655 (1996). A study in which eighty mock juries were shown either a "strong" or "weak" case and given one of five possible instructions on reasonable doubt is particularly revealing. Jurors who received no definition of reasonable doubt or any one of the three most commonly used definitions were just as likely to convict when only 50 percent of the evidence favored the prosecution as when 85 percent did. Such a finding is particularly troubling in light of the Supreme Court's admonition that a criminal defendant "would be at a severe disadvantage ... amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case." *In re Winship*, 397 U.S. at 363, 90 S.Ct. 1068 (internal quotation marks and citation omitted).

Jurors' failure to distinguish between strong and weak cases, however, may be remedied by better reasonable doubt instructions. In fact, the same study found that jurors given the Federal Judicial Center's definition of "proof beyond a reasonable doubt," with its emphasis on the prosecutor's burden, were the only ones who tended to acquit when the case was weak and convict when the case was strong. *Id.* This showing that jurors' decisions are

indeed affected by changes in the language defining the burden of proof demands that critical attention be paid to the wording of reasonable doubt instructions. Given changes in our lexicon and the wording of reasonable doubt instructions over the course of our nation's history, it seems prudent to ask whether modern reasonable doubt instructions explain the burden of proof in a manner consistent with its original meaning.

### A. *Original Meaning of the Burden of Proof*

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment protects criminal defendants against conviction except upon proof beyond a reasonable doubt. *Id.* at 364, 90 S.Ct. 1068. Therefore, to determine whether modern jury instructions on reasonable doubt accurately convey its meaning, it is useful to examine the definition ascribed to reasonable doubt when the Fourteenth Amendment was ratified.

Most modern reasonable doubt instructions are derived in some part from Chief Justice Shaw's instruction in *Commonwealth v. Webster,* 59 Mass. 295, 320 (1850), where he equated proof beyond a reasonable doubt to proof to a moral certainty:

> [W]hat is reasonable doubt? It is a term often used, probably pretty well understood, but not easily defined. It is not mere possible doubt; because every thing relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. The burden of proof is upon the prosecutor. All the presumptions of law independent of evidence are in favor of innocence; and every person is presumed to be innocent until he is proved guilty. If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal. For it is not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary; but *the evidence must establish the truth of the fact to a reasonable and moral certainty; a certainty that convinces and directs the understanding, and satisfies the reason and judgment, of those who are bound to act conscientiously upon it.* This we take to be proof beyond a reasonable doubt.

(emphasis added). Though such "moral certainty" language has recently become disfavored, *Cage v. Louisiana,* 498 U.S. 39, 41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), it was widely used in the nineteenth century around the time the Fourteenth Amendment was ratified. As the Supreme Court has noted, "[p]roof to a 'moral certainty' is an equivalent phrase with 'beyond a reasonable doubt.'" *Victor v. Nebraska,* 511 U.S. 1, 12, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (internal quotation marks and citation omitted). Thus, because the two phrases are equivalent, the definition of "moral certainty," as understood in the nineteenth century, may help clarify the original meaning of "proof beyond a reasonable doubt."

The phrase "moral certainty" came into common use in the seventeenth century, as natural scientists including John Locke and Robert Boyle debated the nature of knowledge and reason. Moral certainty, that which is gained by applying reason, experience, and observation to the testimony of others, was distinguished from physical and mathematical certainty. Steve Sheppard, *The Metamorphoses of Reasonable Doubt: How Changes in the Burden*

*of Proof Have Weakened the Presumption of Innocence,* 78 Notre Dame L.Rev. 1165, 1177 (2003). Before "moral certainty" language became intertwined with the standard of persuasion, jurors had, since the middle ages, deliberated under an "any doubt" standard that allowed jurors to affirm the charge only if they had a "conviction" of the defendant's guilt. *See* Anthony A. Morano, *A Reexamination of the Development of the Reasonable Doubt Rule,* 55 B.U. L.Rev. 507, 512 (1975). However, this distinction between moral and other forms of certainty—while clarifying the type of knowledge attainable in a trial by jury—did not fundamentally alter the long-standing tradition that jurors must be certain of a defendant's guilt in order to convict. *See id.* ("This test probably required jurors to vote for acquittal if they entertained any doubt."); Sheppard, *supra,* at 1181. In fact, the Supreme Court has stated that "when Chief Justice Shaw penned the *Webster* instruction in 1850, moral certainty meant a state of subjective certitude about some event or occurrence." *Victor,* 511 U.S. at 12, 114 S.Ct. 1239.

Thus, the Supreme Court recognized in *Victor* that proof beyond a reasonable doubt is synonymous with proof to a moral certainty, or subjective certitude.[6] The word "subjective" is defined as that which is "based on an individual's perceptions, feelings, or intentions, as opposed to externally verifiable phenomena." Black's Law Dictionary (8th ed.2004). That moral certainty, and thus subjective certitude, were equated with proof beyond a reasonable doubt is supported by the fact that "the jury, in theory, heard only evidence that would facilitate their *reasoning* process"

because "[t]he rules of evidence attempted to prevent the jurors from reaching irrational or erroneous conclusions based upon irrelevant or unreliable information." Morano, *supra,* at 514 (emphasis added).

Historical analysis and Supreme Court precedent therefore suggest that proof beyond a reasonable doubt was originally understood to mean proof that left the jurors certain of the defendant's guilt, based on their perceptions of and feelings about the evidence or lack of evidence presented at trial. A definition of proof beyond a reasonable doubt that conveys the requirement of subjective certainty of guilt is supported by *In re Winship,* where the Supreme Court stated:

> It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with *utmost certainty.*

397 U.S. at 364, 90 S.Ct. 1068 (emphasis added).

### B. *Modern Instructions on the Burden of Proof*

Modern instructions on the burden of proof fail to convey that jurors must be subjectively certain of a defendant's guilt in order to convict. Since the Supreme Court has criticized the phrase "moral certainty," most jury instructions have simply abandoned it without attempting to substitute another comparable term. *E.g.,*

---

**6.** Some scholars, including Anthony A. Morano, have since suggested that the addition of the phrase "reasonable doubt" to jury instructions on the standard of proof was actually an attempt by prosecutors to lower their burden of proof. This Court, however, is obliged to follow the Supreme Court's view that reasonable doubt instructions were designed to protect defendants by embodying the presumption of innocence.

CALJIC No. 2.90 (1994 rev.) (eliminating "moral certainty" from the instruction that a reasonable doubt leaves the minds of the jurors "in that condition that they cannot say they feel an abiding conviction, [to a moral certainty], of the truth of the charge."). *But see, e.g.,* 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 2.03 (2006) (retaining "moral certainty" language). In fact, the vast majority of jury instructions that mention "certainty" at all do so in order to emphasize that the prosecutor does *not* have to prove the charge to an "absolute certainty." *See, e.g.,* Fed. Jud. Ctr., Pattern Crim. Jury Instr. 21 (1988) ("There are very few things in this world that we know with absolute certainty . . . ."); *Victor,* 511 U.S. at 26, 114 S.Ct. 1239 (Ginsburg, J., dissenting) ("This [FJC] instruction plainly informs the jurors that the prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty."). However, in a criminal trial where the presumption of innocence cloaks the defendant, and the burden of proof rests on the prosecutor, it is critical that jurors receive instructions focusing less on what need not be proved and more on what *must* be proved in order to warrant a conviction.

Courts that define the burden of proof for the jury tend to take one of three approaches. The first is to define "reasonable doubt" for the jury. *E.g.,* CALJIC No. 2.90. The second is to define "proof beyond a reasonable doubt," using some formulation of the FJC's "firmly convinced" language. Fed. Jud. Ctr., Pattern Crim. Jury Instr. 21 (1988) (stating that proof beyond a reasonable doubt leaves you "firmly convinced of the defendant's guilt."). The third is a mixed approach, defining both "reasonable doubt" and "proof beyond a reasonable doubt." *E.g.,* Model Crim. Jury Instr. 9th Cir. § 3.5 (2003) (using FJC's "firmly convinced" language and defining "reasonable doubt" as

"based upon reason and common sense."). Because instructions defining "reasonable doubt" are invariably confusing and subtly suggest a shift in the burden of proof, the second approach is superior to both of its counterparts. However, even instructions defining "proof beyond a reasonable doubt" leave room for improvement.

Although jury instructions defining "reasonable doubt" attempt to clarify the term, they are more likely to obfuscate the standard of proof. For example, the jury instructions used in California until 2005 defined reasonable doubt as, "that state of the case which . . . leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge." CALJIC No. 2.90. Such an instruction does little to explain to the jury what the prosecutor must do to prove its case. If jurors given such an instruction were asked to explain the prosecutor's burden, their answer would likely resemble: "The government must prove its case by evidence beyond leaving you in the condition that you cannot say you feel an abiding conviction of the truth of the charge." Solan, *Convicting the Innocent, supra,* at 474. Instructions defining "reasonable doubt" thus require jurors to perform linguistic acrobatics, juggling multiple double-negatives, in order to understand what the prosecutor must prove. Perhaps of even greater concern is that instructions defining "reasonable doubt" instead of "proof beyond a reasonable doubt" imply that jurors should ask whether their doubts are reasonable enough to acquit, rather than whether the prosecutor's evidence is strong enough to convict. As a result, "once the government puts on a case, even a weak one, it appears to be up to the defendant to rebut it." *Id.* at 481.

Instructions defining "proof beyond a reasonable doubt" are preferable to those

explaining "reasonable doubt," as they focus jurors' attention on the prosecutor's burden, rather than on the sufficiency of their doubts. Research showing that jurors receiving "proof beyond a reasonable doubt" instructions are significantly less likely to convict in weak cases than those receiving "reasonable doubt" instructions highlights the need to emphasize the prosecutor's burden to the jury. Horowitz & Kirkpatrick, *supra*, at 663 (finding that juries given the FJC instruction gave 40 percent fewer guilty verdicts in weak cases [50 percent of the evidence favorable to the prosecution] than in strong ones, in contrast to juries given no instruction or common "reasonable doubt" definitions). Recognizing the above criticism of "reasonable doubt" instructions, both California and the Ninth Circuit have now adopted, in part, the FJC's instruction that proof beyond a reasonable doubt "leaves you firmly convinced of the defendant's guilt." Fed. Jud. Ctr., Pattern Crim. Jury Instr. 21; *see* Model Crim. Jury Instr. 9th Cir. § 3.5 (2003) (using the "firmly convinced" language verbatim); Judicial Council of Cal., Crim. Jury Instr. (2006) CALCRIM No. 220 ("Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true."). Although this shift in language is a step in the right direction, both instructions still fall short of conveying to jurors that they must be subjectively certain of the defendant's guilt in order to convict.

## C. *Need for Reform*

The "firmly convinced" formulation, while outperforming others in helping jurors differentiate between strong and weak cases, still leaves something to be desired. Even though jurors given the FJC instruction were significantly more likely than their non-FJC peers to differentiate between strong and weak cases, they still convicted in 35 percent of the weak cases. Horowitz & Kirkpatrick, *su-*

*pra*, at 663. In other words, more than one-third of the FJC juries voted to convict when the prosecution's evidence did not even satisfy a preponderance of the evidence standard.

That the likelihood a criminal defendant will be convicted on so little evidence depends, in part, on the wording of reasonable doubt instructions is of particular concern given recent exonerations based on DNA evidence. Since 1989, 203 people have been exonerated due to DNA testing, including fifteen innocent people who were sentenced to death. *InnocenceProject.org*, Facts on Post–Conviction DNA Exonerations, *http://innocenceproject.org/* Content/35l.php. In light of these revelations, it seems especially pressing that reasonable doubt instructions be reformed in order to ensure that jurors are told in clear and plain language that they must be subjectively certain of a defendant's guilt in order to convict.

Given the above-mentioned empirical studies on jurors' comprehension of reasonable doubt instructions, it seems that an effective instruction should: (1) define "proof beyond a reasonable doubt," emphasizing the prosecutor's burden; (2) be worded in simple, clear language; and (3) clearly convey the requirement that the jury be subjectively certain of the defendant's guilt in order to convict. The Court recognizes that both California's and the Ninth Circuit's reasonable doubt instructions have made improvements over prior models, particularly in defining "proof beyond a reasonable doubt" rather than just "reasonable doubt." Both instructions, however, could be and should be further improved.

The Ninth Circuit instruction maintains language defining a reasonable doubt as one based on "reason and common sense." Model Crim. Jury Instr. 9th Cir. § 3.5 (2003). This wording may undo the bene-

fits gained by defining "proof beyond a reasonable doubt" earlier in the instruction. This explanation does little to elucidate the concept of reasonable doubt—few jurors are likely to gain understanding of reasonable doubt by being told, essentially, that it is a doubt that is reasonable. On the other hand, there is a real risk that such qualifications may result in dissuading a juror from giving proper weight to her doubts, encouraging her to convict because her doubts may not be substantial enough to acquit.

Furthermore, while both instructions describe "proof beyond a reasonable doubt" in terms of the effect such proof has on the juror, they do not clearly convey that the proof must leave the jurors subjectively certain of the defendant's guilt. The Ninth Circuit's instruction requires that jurors be "firmly convinced" of the defendant's guilt in order to convict. *Id.* However, one can be "firmly convinced" of something based on much less evidence than that which would leave her subjectively certain. The "abiding conviction" language in the California instruction comes closer in definition to the concept of subjective certainty, but the antiquated wording likely leaves jurors confused. CALCRIM No. 220 (2006). Colloquial words that describe subjective certainty will likely be more effective in explaining to the jury the truly high standard of proof and the presumption of innocence.

The Court hopes that this discussion will draw attention to the significance of the wording of reasonable doubt instructions and lend support to future endeavors to reform them.

## IV. ANALYSIS

■ Though the Court may have reservations about the CALJIC instruction on reasonable doubt given in Petitioner's trial, it does not face that issue here. The question presented is whether the California Court of Appeal acted contrary to, or unreasonably applied, Supreme Court precedent when it held that the "skiing in Blythe" analogy did not violate Petitioner's due process rights. Although the Report states "the skiing in Blythe" analogy was "ill-advised and arguably confusing," it nevertheless concludes that the Court of Appeal did not contravene established Supreme Court precedent in upholding Petitioner's conviction because the analogy, when taken in the context of all the reasonable doubt instructions, "did not mislead the jury to the point of violating Stoltie's due process rights." (Report at 8.) However, in Petitioner's Objections to the Report, he asserts that the analogy "turned reasonable doubt on its head . . . equating reasonable doubt with extreme doubt." (Obj. at 2.) If the "skiing in Blythe" analogy did, in fact, equate the reasonable doubt standard with a standard of extreme doubt, then the Petition may have merit.

The Supreme Court has consistently held that the standard of proof required by the Constitution for a criminal conviction is proof of guilt beyond a reasonable doubt. *E.g., In re Winship,* 397 U.S. at 362, 90 S.Ct. 1068. In *Winship,* the Court explained that the burden of proof beyond a reasonable doubt in criminal trials is a fundamental right protected by the Due Process Clause, as it "provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." *Id.* at 363, 90 S.Ct. 1068 (internal quotation marks and citation omitted). The Court asserted: "It is critical, that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned." *Id.* at 364, 90 S.Ct. 1068. Thus, without proof of guilt beyond a reasonable doubt, a criminal

conviction is unconstitutional under Supreme Court precedent.

■ The Supreme Court has further held that jury instructions that raise the degree of doubt required for acquittal may violate the Constitution. For example, in *Cage v. Louisiana,* 498 U.S. 39, 40, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), *overruled on other grounds by Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the Court found that jury instructions defining reasonable doubt as an "actual and substantial doubt" and a "grave uncertainty" unconstitutionally lowered the burden of proof. The Court reasoned that the above definitions "suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard." *Id.* at 41, 111 S.Ct. 328. Such constitutionally deficient reasonable doubt instructions can never be harmless error. *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In *Sullivan,* the Court stated:

> [T]he essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury's findings. A reviewing court can only engage in pure speculation—its view on what a reasonable jury would have done. And when it does that, the wrong entity judges the defendant guilty.

*Id.* at 281, 113 S.Ct. 2078 (internal quotation marks and citation omitted). Thus, *Cage* and *Sullivan* establish that if a jury instruction defines "reasonable doubt" in a manner that raises the degree of doubt required for acquittal, the error cannot be harmless and the conviction cannot stand.

■ That is not to say, however, that all ambiguous or confusing jury instructions necessarily violate a defendant's due process rights. *Middleton v. McNeil,* 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (per curiam). Even a showing that a reasonable juror *could have* interpreted a given instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause is not sufficient to merit habeas relief. A reasonable doubt instruction may only be held reversible error if there is a " *reasonable likelihood* that the jury has applied the challenged instruction in a way that violates the constitution." *Estelle,* 502 U.S. at 72, 112 S.Ct. 475 (emphasis added).

Furthermore, the Supreme Court held in *Victor v. Nebraska* that defective reasonable doubt instructions may be cured by other, properly-phrased instructions. 511 U.S. 1, 20, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). In *Victor,* the Court held that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden.... Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." *Id.* at 6, 114 S.Ct. 1239 (internal quotation marks and citation omitted). The Court distinguished the case from *Cage,* although the instructions at issue contained phrases identical to those the *Cage* Court had deemed unconstitutional. *Id.* at 7, 18, 114 S.Ct. 1239 (upholding instructions containing "moral certainty" and "substantial doubt" language); *Cage,* 498 U.S. at 41, 111 S.Ct. 328 (overturning the conviction because reasonable doubt instructions containing "moral certainty" and "substantial doubt" language were unconstitutional). In upholding the verdict, the Court reasoned that, unlike the *Cage* instructions, the objectionable language in *Victor* "impressed upon the factfinder the need to reach a subjective state of near certitude" when viewed in conjunction with other, constitutionally permissible instructions that were given. *Id.* at 15, 114 S.Ct. 1239.

Therefore, in this case, Supreme Court precedent required the California Court of Appeal to consider whether the challenged

analogy, in the context of the overall charge, created a "reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Id.* at 6, 114 S.Ct. 1239.

Unlike the instructions at issue in *Victor*, the challenged "skiing in Blythe" analogy, when taken in context of the overall charge, raised the degree of doubt required for acquittal from a reasonable doubt to an extreme doubt. Although the judge repeatedly read CALJIC No. 2.90, which the Ninth Circuit has found constitutional, *Lisenbee v. Henry*, 166 F.3d 997 (9th Cir.1999), those instructions did not cure the constitutionally deficient analogy's misleading effects. Because the jurors were deadlocked and demonstrably confused after receiving the CALJIC instructions, and because the analogy was the last instruction they heard, there is a reasonable likelihood that they applied an unconstitutional "extreme doubt" standard when convicting Petitioner. Therefore, the California Court of Appeal's decision involved an "unreasonable application of" clearly established federal law, as its application of governing legal principles to the facts of this case was objectively unreasonable.

In order to understand the manner in which the "skiing in Blythe" analogy raised the degree of doubt required for acquittal, it is useful to dissect the instruction into two components. The first component reads: "I'm gonna go [to Blythe] in the middle of July and I am taking my skis with me because it snows every July, you might say, I doubt it. And that would be a reasonable doubt...." (Ct. Rep.'s Tr. 611.) This instruction suggested that the jury should acquit only if the prosecution's theory was as utterly improbable as a person going skiing in the desert in July. The type of doubt explained in this instruction is properly characterized as an extreme doubt. Because this instruction equated an extreme doubt with a reasonable doubt, it created a reasonable likelihood that the jury would apply an unconstitutional standard of proof, believing Petitioner could only be acquitted if the prosecution's theory was essentially impossible.

The second component of the analogy does nothing to cure this defective language. After equating extreme doubt to reasonable doubt, the judge went on to state, "if I told you I am going to Blythe and I am taking my swimming suit and water skis to go skiing in the Colorado River in the middle of July, but I am afraid it might be too cold, you'd think, I doubt it, but maybe that's not so unreasonable." *Id.* The wording here is particularly confusing because it uses the cumbersome combination of a qualifier, "maybe," with a double-negative, "not so unreasonable." Removing the double-negative and simplifying the phrase's construction, one sees that this component means: "If I told you I was planning to go to Blythe to go waterskiing in the Colorado River in July, but was afraid the water would be too cold, you would be reasonable to doubt that I believed the water would be cold." Thus, the second component describes a reasonable doubt, though its placement in the context of the overall analogy implies that it is describing an unreasonable one.

This analogy's truly pernicious effect lies in the fact that its actual meaning is quite the opposite of what it purports to convey. The California Court of Appeal may be technically correct in stating that the analogy "attempt[ed] to ... contrast [ ] a doubt that is reasonable with one that is not." *Stoltie*, 2005 WL 2746783, at *5. What the analogy attempted to do, however, was not what it accomplished. Taken literally, the analogy actually compares an extreme doubt in the first component with a reasonable doubt in the second. As a result, the analogy misleads in two respects—first, by labeling an extreme doubt

as merely a reasonable one, and second, by implying a reasonable doubt is an unreasonable one.

Although the Report recognizes that the "skiing in Blythe" analogy "when parsed out ... contrasts an absurd statement that warrants extreme doubt with a statement that would be 'not so unreasonable' to doubt," it argues that such an instruction is merely "unhelpful" and not unconstitutional. (Report at 8.) Such an instruction, however, turns the concept of "reasonable doubt on its head," (Obj. at 2), by calling extreme doubts merely reasonable and reasonable doubts unreasonable. Thus, the Report's acknowledgment that the analogy's actual meaning is in conflict with its purported meaning highlights the very defect that renders the instruction unconstitutional.[7]

In applying the legal principles from *Victor* to the facts of this case, it would be objectively unreasonable to find that the context in which this analogy was given cured its deficiencies. The objectionable language in *Victor* was found within the context of a longer reasonable doubt instruction and surrounded by other language that properly explained the burden of proof. *Id.* at 20, 114 S.Ct. 1239 (holding that the instruction was constitutional because "the context makes clear that 'substantial' is used in the sense of existence rather than magnitude of the doubt. . . ."). The Court recognized, however, that *Cage* was distinguishable because, in that case, there was "nothing else in the instruction to lend meaning to the [challenged] phrase." *Id.* at 16, 114 S.Ct. 1239. The facts of this case resemble those in *Cage* rather than *Victor*.

Where the context of the overall instructions in *Victor* minimized the effects of the

potentially erroneous instructions, the context here actually exacerbated the effects of the confusing analogy. The jury was read the CALJIC No. 2.90 instruction, or some variation thereof, no fewer than four times. However, the jury remained confused about the standard of proof after each instruction, as shown by the jurors' repeated requests for clarification. Furthermore, the context in which the analogy was given was in answer to the following question posed by Juror No. 3 after hearing the repeated CALJIC instructions: "If I have a doubt, that means not guilty, if I wouldn't have a reasonable doubt?" (Ct. Rep.'s Tr. at 610.) That Juror No. 3 so clearly misconstrued the reasonable doubt standard after hearing multiple, proper reasonable doubt instructions indicates that those instructions did not cure the defects of the "skiing in Blythe" analogy. Because this constitutionally deficient analogy was injected into a context of confusion over the reasonable doubt standard, it "had the effect of blasting a verdict" out of a deadlocked jury. (Obj. at 2.)

The Report cites several cases in which the Supreme Court "has declined to find that an arguably erroneous or ambiguous instruction warranted reversal, finding instead that the instructions as a whole were otherwise sufficient to safeguard the defendant's due process rights." (Report at 7,) The Report places Petitioner's claims into this category of cases wherein a deficient instruction was cured by the propriety of the overall charge, and thus concludes the Court of Appeal's decision was not "contrary to" Supreme Court precedent.

However, the Report misplaces Petitioner's claim because each of the cited cases

---

7. Furthermore, it is not clear that all jurors were familiar with Blythe. It is axiomatic that all jurors must receive the same statement of the law. However, absent evidence

of the climate and location of Blythe, there is a real risk that not all jurors even understood the basic premise of the analogy.

is distinguishable by factual circumstances curing the defective instruction that are absent here. *See Middleton,* 541 U.S. at 435, 124 S.Ct. 1830 (reviewing an erroneously defined "imminent peril" instruction for the purposes of an imperfect self-defense claim); *Jones v. United States,* 527 U.S. 373, 384, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (involving an ambiguity regarding the requirement of unanimity in sentencing proceedings); *Cupp v. Naughten,* 414 U.S. 141, 142, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) (considering an instruction to the jury that "every witness is presumed to speak the truth."). For example, in *Middleton,* the Court ended its analysis by finding that the error in defining "imminent peril" was cured by the prosecutor's own closing argument, which resolved the ambiguity in the defendant's favor. 541 U.S. at 438, 124 S.Ct. 1830. Similarly, in *Jones,* the Court concluded that an ambiguous instruction was cured by a later clarifying instruction. 527 U.S. at 389, 119 S.Ct. 2090. By contrast, in this case, the defective instruction was the last one the jurors heard, after they expressed profound confusion over all previous reasonable doubt instructions. The prior instructions demonstrably failed to help the jurors understand the burden of proof, and no subsequent efforts were made to clarify the analogy.

Finally, the Report cites *Cupp v. Naughten* for the proposition that two explicit instructions clarifying the challenged instruction were enough to ensure that the trial was fair. However, the *Cupp* Court held that the erroneous "presumption of truthfulness" instruction was cured by a correct and detailed definition of the reasonable doubt standard and the presumption of innocence. *Cupp,* 414 U.S. at 142, 94 S.Ct. 396. In addition, the Court explained that "the [presumption of truthfulness] instruction by its language neither shifts the burden of proof nor negates the presumption of innocence...." *Id.* at 148, 94 S.Ct. 396. In this case, however, the "skiing in Blythe" analogy, "by its language," negated the presumption of innocence by raising the degree of doubt required for an acquittal from a reasonable to an extreme doubt.

Furthermore, the prior reasonable doubt instructions in this case could not cure the analogy's defects. Because the judge gave an example of an extreme doubt in an analogy designed to explain reasonable doubt, there is a reasonable likelihood that the jurors applied an extreme doubt standard, all the while thinking it was actually the reasonable doubt standard the judge had tried to explain previously. This erroneous example of the type of doubt the jury must hold in order to acquit therefore removed any possible curative effect of the prior instructions. The last instruction the jury received before resuming deliberations essentially told them to acquit only if the prosecution's case was as impossible to believe as a person skiing in 109 degree heat in the California desert.[8]

---

**8.** Although this analogy was particularly confusing, the Court notes that the use of *any* metaphor or analogy in any charge to the jury, particularly the reasonable doubt charge, invites misunderstandings. A metaphor is defined as "a figure of speech in which a word or phrase literally denoting one kind of object or idea is used in place of another to suggest a likeness or analogy between them." (Merriam–Webster's Collegiate Dictionary 11th ed.2003). It seems self-evident as a matter of experience and common sense that not all persons will understand the idea a metaphor or analogy seeks to communicate. It would be ill-advised for trial courts to use figures of speech (the likes of which are used in college entrance examinations precisely because they are difficult to comprehend) to convey the most fundamental principle of our system of justice to a jury of laypersons.

The preeminence of the trial judge in a criminal proceeding is especially potent when a jury becomes deadlocked. *Bollenbach v. United States,* 326 U.S. 607, 612, 66 S.Ct. 402, 90 L.Ed. 350 (1946). While perhaps not deadlocked directly on Count 4, the assault charge, the jury in Petitioner's case was, by the foreperson's own admission, seeking to "renege" a previously agreed upon verdict on Count 4 "because of the deadlock on No. 1." (Ct. Rep.'s Tr. at 601.) In this context, it is wise to heed the *Bollenbach* Court's warning:

> The influence of the trial judge on the jury is necessarily and properly of great weight, and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptionable and unilluminating abstract charge.

*Id.* (internal citation omitted). In Petitioner's case, the "skiing in Blythe" analogy was the last and decisive word issued by the judge. The analogy was severely misleading on the vital issue of reasonable doubt and therefore cannot be cured by the prior "unexceptionable and unilluminating abstract charge." The Court therefore finds that Petitioner's due process rights were violated by the reasonable doubt instructions "taken as a whole." *Victor,* 511 U.S. at 6, 114 S.Ct. 1239.

## V. CONCLUSION

For the foregoing reasons, and because the state court's application of Supreme Court precedent to the facts of this case

was objectively unreasonable, the Court grants the petition.

IT IS SO ORDERED.